**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                  No. CR 12-0268 JB

OSCAR LUJAN,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Defendant's Petition for a Writ of Coram Nobis, filed June 23, 2020 (Doc. 57)("Petition"). The Court held a hearing on November 6, 2020. See Clerk's Minutes, filed November 6, 2020 (Doc. 73). The primary issues are: (i) whether the Court may consider the Petition, because Defendant Oscar Lujan, in his plea colloquy to plead guilty to being a felon-in-possession, waived his collateral-attack rights under 28 U.S.C. § 2255; (ii) whether Lujan is entitled to a writ of coram nobis, because his federal conviction would be lawful today. The Court concludes that: (i) Lujan's collateral-attack waiver does not bar the Court from considering his Petition, because the waiver does not mention expressly coram nobis relief, and because enforcing his collateral-attack waiver would result in a miscarriage of justice; and (ii) Lujan is not entitled to a writ of coram nobis, because, although United States v. Reese, 2014-NMSC-013, 326 P.3d 454,[1] states a settled rule and Lujan may take advantage of Rehaif v. United States, 139 S. Ct. 2191 (2019), on collateral review, there is no factual error in Lujan's federal felony conviction and Lujan was not duly diligent in bringing his Petition. The Court, therefore,

---

[1] In United States v. Reese, the Supreme Court of New Mexico concludes that "dismissal of the criminal charges upon the conditions of deferment automatically restores a convicted felon's civil rights by operation of law." 2014-NMSC-013, ¶ 50, 326 P.3d 454, 465.

denies the Petition.

**FACTUAL BACKGROUND**

On December 9, 2005, Lujan pled no contest to one count of larceny, in violation of N.M.S.A. § 30-16-1.  See State of New Mexico v. Lujan, Case No. D-1329-CR-2005-00302 at 1, Register of Actions, filed June 23, 2020 (Doc. 57-1)("State Docket").  Lujan pled guilty to larceny over $250.00.  See State Docket at 2.  Today, larceny over $250.00 but less than $500.00 is a misdemeanor and any larceny over $500.00 is a felony, see N.M.S.A. § 30-16-1, but Lujan pled to a violation of N.M.S.A. § 30-16-1 before it was amended in 2006, see State Docket at 2.  When Lujan pled guilty, larceny of something worth between $250.00 and $2500.00 was a fourth-degree felony.  See 1987 N.M. Laws Ch. 121 § 1 (amended by 2006 N.M. Laws Ch. 29 § 2).  Lujan received a deferred sentence.  See State Docket at 2.  The case was dismissed on October 12, 2007. See State Docket at 2.

On August 3, 2012, Lujan pled guilty in federal court to one count of being a felon-in-possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  See Plea Agreement at 3, filed August 3, 2012 (Doc. 45)("Plea Agreement").  The Plea Agreement specifies:

> The Defendant agrees that the Defendant is the same person who was previously convicted of the following offenses, each of which was at the time of conviction punishable by imprisonment for a term exceeding one year:
>
> a.    a 2005 conviction in the Thirteenth Judicial District Court, Sandoval County, New Mexico, for larceny (over $250) in D-1329-CR-05-0302 (Defendant received a deferred sentence).
>
> The Defendant further agrees that the conviction listed above is valid and free from fundamental error, and that the Defendant's constitutional rights, including the right to counsel, were not violated when the conviction was obtained.

Plea Agreement at 6.  The Plea Agreement also contains a waiver of collateral-attack rights: "In addition, the Defendant agrees to waive any collateral attack to the Defendant's conviction

pursuant to 28 U.S.C. § 2255, except on the issue of counsel's ineffective assistance in negotiating or entering this plea or this waiver." Plea Agreement at 7. The Honorable Lorenzo F. Garcia, United States Magistrate Judge for the United States District Court for the District of New Mexico, accepted Lujan's plea on August 3, 2012. See Plea Minute Sheet at 1, filed August 3, 2012 (Doc. 43). The Court sentenced Lujan to 18-months' imprisonment, followed by two years of supervised release. See Sentencing Minute Sheet at 1, filed November 20, 2012 (Doc. 50).

Almost two years later, on May 2, 2014, the Supreme Court of New Mexico decided United States v. Reese. In United States v. Reese, the Supreme Court of New Mexico answered a question that the United States Court of Appeals for the Tenth Circuit certified to it:

> If an otherwise-qualified person has completed a deferred sentence for a felony offense, is that person barred from holding public office without a pardon or certificate from the governor, as required by N.M. Ann. § 31-13-1(E), or is that person's right to hold office automatically restored by Article VII, §§ 1, 2 of the New Mexico Constitution and N.M. Stat. Ann. § 31-13-1(A)(1)?

United States v. Reese, 2014-NMSC-013 ¶ 1, 326 P.3d 454, 454. The Supreme Court of New Mexico concluded that "dismissal of the criminal charges upon satisfaction of the conditions of deferment automatically restores a convicted felon's civil rights by operation of law." United States v. Reese, 2014-NMSC-013 ¶ 50, 326 P.3d at 465. Although satisfying the conditions of deferment restores a felon's civil rights, it "does not require that the record of the conviction be erased." United States v. Reese, 2014-NMSC-013 ¶ 49, 326 P.3d 454, 465. In other words, United States v. Reese does not hold that satisfying conditions of deferment will erase an adjudication of guilt. 2014-NMSC-013, 326 P.3d 454. See Green v. Clingman, No. CIV 18-0817, 2020 WL 5630400, at *4 (D.N.M. Sept. 21, 2020)(Parker, J.).

While in prison and on probation, Lujan did not file a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. See Petition at 2. Lujan never appealed his sentence. See

Petition at 2.  On July 26, 2015, Lujan's term of supervised release ended.  See Petition at 2.

On June 21, 2019, the Supreme Court of the United States of America decided Rehaif v. United States, 139 S. Ct. 2191.  In Rehaif v. United States, the Supreme Court addressed whether 18 U.S.C. § 924(a)(2)'s requirement that someone "knowingly violates" 18 U.S.C. § 922(g) -- which provides that it "shall be unlawful" for certain people to possess firearms -- applies both to a defendant's conduct and a defendant's status as someone prohibited from possessing firearms, 18 U.S.C. § 924(a)(2).  See Rehaif v. United States, 139 S. Ct. at 2194.  Section 922(g) lists nine categories of people, including felons and "alien[s]" who are "illegally or unlawfully in the United States."  18 U.S.C. § 922(g).  The question before the Supreme Court was, therefore, does "knowingly" mean that the United States must prove that a defendant "knew both that he engaged in the relevant conduct (that he possessed a firearm) and also that he fell within the relevant status (that he was a felon, an alien unlawfully in this country, or the like)?"  Rehaif v. United States, 139 S. Ct. at 2194.

In Rehaif v. United States, 139 S. Ct. at 2194, a university dismissed Hamid Rehaif after he received poor grades, which rendered him ineligible for his nonimmigrant student visa.  See 139 S. Ct. at 2194.  Rehaif neither entered a new university nor left the United States.  See 139 S. Ct. at 2194.  Rehaif later visited a firing range in the United States, where he shot two firearms. See 139 S. Ct. at 2194.  Rehaif was charged with being an alien in possession of firearms, in violation of 18 U.S.C. §§ 922(g) and 924(a)(2).  See 139 S. Ct. at 2194.  At Rehaif's trial, over Rehaif's objection, the trial judge instructed the jury that the United States does not have to prove that Rehaif knew he was "illegally or unlawfully in the United States."  Rehaif v. United States, 139 S. Ct. at 2194.  Rehaif was convicted and sentenced to eighteen months' imprisonment.  See 139 S. Ct. at 2194.

The Supreme Court overturned Rehaif's conviction.  See 139 S. Ct. at 2200.  Writing for the majority, Associate Justice of the United States Supreme Court Stephen Breyer concluded that, to convict someone of a violation of 18 U.S.C. §§ 922(g) and 924(a)(2), the United States "must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm."  Rehaif v. United States, 139 S. Ct. at 2200.  In other words, the Supreme Court decided that "knowingly" in 18 U.S.C. §§ 922(g) and 924(a)(2) attaches both to the firearm possession and to the defendant's status as a prohibited person.  See Rehaif v. United States, 139 S. Ct. at 2200.  Because the United States did not prove that Rehaif knew he was an alien as 18 U.S.C. § 922(g) defines the term, he was unlawfully convicted.  See Rehaif v. United States, 139 S. Ct. at 2194.

## PROCEDURAL BACKGROUND

Lujan contends that, like Rehaif, he was convicted unlawfully, because the United States did not prove that he knew he was a prohibited person under 18 U.S.C. § 922(g) -- here, a felon.  See Petition at ¶¶ 18-19, 7.  Lujan, therefore, asks the Court to vacate his 2012 felon-in-possession conviction.  See Petition ¶ 7, at 3.  The United States does not oppose Lujan's coram nobis Petition.  See United States' Response to Petition for a Writ of *Coram Nobis* at 1, filed August 31, 2020 (Doc. 69)("Response")(emphasis in original).

1.    **The Petition.**

Lujan asks the Court to grant a writ of coram nobis that would vacate his 2012 felon-in-possession conviction, because the Magistrate Judge who accepted Lujan's guilty plea did not tell Lujan that the United States must prove that Lujan knows he was a felon.  See Petition ¶¶ 11-17, at 5-6.  According to Lujan, Rehaif v. United States, 139 S. Ct. at 2194, requires that Lujan have been told before pleading that the United States must prove that Lujan knows he is a

felon.  See Petition at ¶18, at 7.  In the Petition, Lujan makes four arguments: (i) Rehaif v. United States, 139 S. Ct. at 2194, requires that his 2012 felon-in-possession conviction be set aside; (ii) the All Writs Act, 28 U.S.C. § 1651, gives the Court jurisdiction to consider his Petition; (iii) the collateral-attack waiver in Lujan's Plea Agreement does not bar his Petition; and (iv) the Court may not dismiss summarily the Petition before the United States answers the Petition.

First, Lujan contends that his 2012 felon-in-possession conviction is unlawful, because Rehaif v. United States, 139 S. Ct. at 2194, changed the law.  See Petition at ¶ 6, at 2.  According to Lujan, a guilty plea is "not voluntary and intelligent," and violates his guarantee of due process under the Fifth Amendment to the Constitution of the United States of America, U.S. Const. amend. V, when "the judge taking the plea does not inform the defendant of all the elements of the crime."  Petition ¶ 14, at 5-6.  Lujan argues that, because Rehaif v. United States, 139 S. Ct. at 2194, requires the United States to "prove that [he] knowingly violated the material elements" of 18 U.S.C. §§ 922(g) and 924(a)(2), his conviction was unlawfully taken.  Petition at 6.  Moreover, Lujan also alleges that he was not a felon when he was convicted, because, "[u]nder New Mexico law, 'the dismissal of charges following the successful completion of a deferred sentence equate[s] to an automatic restoration of civil rights.'"  Petition ¶ 19, at 7 (quoting United States v. Reese, 2014-NMSC-013 ¶ 35, 326 P.3d at 462).

Second, Lujan argues that 28 U.S.C. § 1651 gives the Court jurisdiction to consider the Petition.  See Petition at 7.  Lujan alleges that the All Writs Act, 28 U.S.C. § 1651, "confers jurisdiction on this Court to grant relief in the form of a writ of error *coram nobis*."  Petition ¶ 20, at 7 (emphasis in original)(citing United States v. Morgan, 346 U.S. 502, 506 (1954)).  According to Lujan, coram nobis is "separate and apart" from any post-conviction relief that 28 U.S.C. § 2255 confers.  Petition ¶ 20, at 7.  Lujan asserts that he satisfies all the elements required for a court to

- 6 -

grant coram nobis, because: (i) any 28 U.S.C. § 2255 relief is not available, as Lujan is not in custody; (ii) the Supreme Court decided <u>Rehaif v. United States</u>, 139 S. Ct. at 2194, in 2019, which creates a "[v]alid reason[]" for not attacking the conviction earlier; and (iii) a "claim that implicates a retroactive change in the law implicates an error of the most fundamental character."  Petition at ¶¶ 21-22, at 8-9.  Further, Lujan states that a "criminal conviction is presumed to have collateral consequences," so a challenge to a conviction satisfies Article III of the United States Constitution's case-or-controversy requirement.  <u>See</u> U.S. Const. art. III § 2.

Third, Lujan argues that his collateral-attack waiver does not apply.  <u>See</u> Petition ¶ 23, at 9.  Lujan states, first, that his Plea Agreement's collateral-attack waiver does not expressly mention coram nobis, so it does not preclude post-detention collateral attack.  <u>See</u> Petition ¶ 23, at 10.  Second, Lujan alleges that, even if the collateral-attack waiver applies to coram nobis, the waiver is unenforceable, because enforcing it will "result in a miscarriage of justice."  Petition ¶ 23, at 10.

Fourth, Lujan argues that the Court cannot dismiss the Petition before the United States has a chance to respond.  <u>See</u> Petition ¶ 24, at 11.  Lujan asserts that, because "the government's affirmative defenses are not jurisdictional," the Court "'must accord the parties fair notice and an opportunity to present their positions.'"  Petition ¶ 26, at 12 (quoting <u>Day v. McDonough</u>, 547 U.S. 198, 209 (2006)).  According to Lujan, the Court may not, therefore, "rely on any affirmative defense to dismiss" the Petition before hearing from the United States.  Petition ¶ 26, at 12.

## 2.    <u>The Response</u>.

The United States responds to the Petition.  <u>See</u> Response at 1.  The United States notes that it "does not oppose" Lujan's Petition for a writ of coram nobis.  Response at 1.  According to the United States, Lujan's 2012 felon-in-possession conviction was "valid at the time of his conviction and sentence," but the Supreme Court of New Mexico's decision in <u>United States v.</u>

Reese, 2014-NMSC-013, 326 P.3d 454, "changed the legal landscape." Response at 1. The United States alleges that Lujan would have been "actually innocent of being a felon in possession of a firearm if he had been charged *after* the Supreme Court of New Mexico issued" United States v. Reese, 2014-NMSC-013, 326 P.3d 454. Response at 1 (emphasis in original). According to the United States, United States v. Reese, 2014-NMSC-013, 326 P.3d 454, "is not retroactive," but that Lujan should benefit from it, because "it would [not] be in the public's interest to oppose coram nobis relief." Petition at 2.

3.   **The Hearing**.

The Court held a hearing on November 6, 2020. See Clerk's Minutes at 1. The hearing began with the Court noting that it appears that Lujan asks for a writ of coram nobis under one theory, but the United States "doesn't like that theory but gave . . . you another one that you didn't mention in your petition." Transcript of Hearing at 2:24-3:1 (taken November 6, 2020)(Court)("Tr.").[2] Addressing Lujan's counsel, the Court noted that it "looks like [the United States] created a theory for you, then agreed to that theory." Tr. at 3:1-2 (Court). Lujan responded that he disagrees with the United States with the exception of maintaining that "it still raises a Rehaif issue[,] which is that one can't know something that is not in fact true." Tr. at 3:12-13 (Elsenheimer). According to Lujan, "Rehaif is the appropriate analysis." Tr. at 3:15-16 (Elsenheimer).

The Court stated that it has a "problem" with Lujan's theory and explained that it thinks that Lujan's theory is "creating some problems for the U.S. Attorney's office." Tr. at 3:20-22 (Court). The Court noted that Lujan's primary theory about Rehaif v. United States, 139 S. Ct.

---

[2]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

2200, could conflict with the United States' position in <u>United States v. Apache Young</u>, No. CR 17-0694 JB, where the defendant was convicted on retrial before the Supreme Court decided <u>Rehaif v. United States</u>, 139 S. Ct. at 2200. <u>See</u> Tr. at 3:24-4:1 (Court). The Court explained that, in <u>United States v. Apache Young</u>, No. CR 17-0694 JB, "the U.S. Attorney's office fought very strenuously" against the prospect of holding a third trial with the jury instructed about the new element that <u>Rehaif v. United States</u>, 139 S. Ct. at 2200, requires. Tr. at 4:1-2 (Court). The Court stated that

> I asked the U.S. Attorney, I said you go back and talk to the appellate division and have them talk to DOJ and say are you going to concede error if this goes to the Tenth Circuit if I deny the motion for a third trial. And they said no, we're going to defend you [--] this is my memory [--] they were going to defend me and they had permission all the way up the ladder to oppose the new trial. And so I think that's probably the reason they're saying they can't concede to that theory here.

Tr. at 4:4-15 (Court). Nevertheless, the Court further explained that it is "trouble[d]" by the United States "inventing a theory for the defendant," Tr. at 4:15-17 (Court), and that it has "a little trouble with" the United States "thinking up theories to let people out of prison," Tr. at 4:19-21 (Court).

Lujan responded, stating that he "agree[s]" with the United States that Lujan "was not a felon at the time of his possession of the firearm that gave rise to this case." Tr. at 5:1-4 (Elsenheimer). The Court stated that "that's really not true," because Lujan "was a felon at the time of the offense," but New Mexico "came back and changed its law." Tr. at 5:7-9 (Court). In response, Lujan contended that <u>United States v. Reese</u> "clarified New Mexico law, but it didn't change anything about New Mexico law." Tr. at 5:18-19 (Elsenheimer). Lujan asserted that the "status of a deferred sentence under New Mexico law has always been that once somebody completes a term of probation and an order of dismissal is filed, that case is dismissed. It's not a conviction." Tr. at 5:20-23 (Elsenheimer). The Court asked Lujan to further explain <u>United States</u>

v. Reese.  See Tr. at 6:4-9 (Court).  Lujan noted that United States v. Reese came before the

Supreme Court of New Mexico on a question that the United States Court of Appeals for the Tenth

Circuit certified.  See Tr. at 6:10-25 (Elsenheimer).  According to Lujan, a case from the United

States Court of Appeals for the Ninth Circuit "said a deferred sent[ence] . . . was a conviction,"

but the case "had no bearing in the Tenth Circuit and really kind of misunderstood and

misconstrued New Mexico law."  Tr. at 7:8-12 (Elsenheimer).  Lujan alleged that United States v.

Reese clarifies that, "at the time that Mr. Lujan possessed the firearm that gave rise to this charge

and conviction, he was not a felon under New Mexico law, [and that] he was actually innocent of

the charge of felon in possession of a [firearm] because he was not a felon."  Tr. at 7:14-19

(Elsenheimer)(citing United States v. Reese, 2014-NMSC-013, 326 P.3d 454).

The Court then asked for further clarification about Lujan's status and why he is asking for

a writ of coram nobis.  See Tr. at 7:22-8:6 (Court).  Lujan stated that he is "no longer on supervised

release, [and] he's certainly not in custody."  Tr. at 8:8-9 (Elsenheimer).  Lujan alleged that his

2012 felon-in-possession conviction prejudices him in two ways.   See Tr. at 8:15-17

(Elsenheimer).  First, Lujan stated that his 2012 felon-in-possession conviction prejudices him,

because "it is a deprivation of his constitutional right to bear arms."  Tr. at 8:17-18 (Elsenheimer).

Lujan stated that, although he is not a gun owner, there is a risk of constructive possession

whenever he gets into a gun owner's car, because the gun owner may be storing a gun in the

car -- "[a] lot of people may have guns in their glove compartment."  Tr. at 8:24-25 (Elsenheimer).

Second, Lujan contended that his 2012 felon-in-possession conviction prejudices him by making

it more difficult to get a job.  See Tr. at 9:22-25(Elsenheimer).  Lujan noted that he considered

getting a job with the United States Postal Service, but chose not to pursue it, because he knew

that his conviction would make it a "nonstarter."  Tr. at 10:5 (Elsenheimer).  Lujan's attorney

added that he has represented hundreds of people who have felony convictions and observed that having a felony makes it "considerably more difficult for advance in the workplace." Tr. at 10:10-11 (Elsenheimer).

The Court noted that it does not have a lot of experience dealing with coram nobis petitions, and asked Lujan to why, when "we are just swamped with criminal cases over here," "we're going back and cleaning up files that are long closed." Tr. at 11:10-18 (Court). Lujan's attorney responded by noting that he has "never seen a situation like this," where there is "actual innocence and where I can definitively point to the legal problem that existed at the time and the mistake that was made." Tr. at 12:4-8 (Elsenheimer). Lujan asserted that he sees no risk of opening the flood gates to litigation, because this case involves a "very unique situation." Tr. at 12:14 (Elsenheimer). According to Lujan there are "no more than two or three" people in his situation, where someone finished probation, the State court entered a dismissal order, and then the person subsequently possessed a firearm. Tr. at 12:19 (Elsenheimer). Lujan asserted, moreover, that coram nobis is an "extraordinary remedy" for "very unique situations." Tr. at 13:3-4 (Elsenheimer).

The Court asked Lujan what standard it should use to evaluate the coram nobis petition. See Tr. at 13:14-22 (Court). Lujan argued that the Tenth Circuit's coram nobis standard involves a showing of prejudice from a collateral consequence and a showing of fundamental error. See Tr. at 14:1-5 (Elsenheimer). The Court asked Lujan whether he would "take a grant of your petition on either theory that's on the table." Tr. at 15:21-23 (Court). Lujan responded that he believes both his theory and the United States' theory are appropriate grounds on which to justify granting his coram nobis Petition. See Tr. at 15:24-16:3 (Elsenheimer).

The United States began its argument by noting that it's "main concern" is "not the Rehaif case" but the "[United States v. ]Reese case," because, "even though we believe that Mr. Lujan's

conviction was entirely valid when it was issued in 2012, the conviction and sentence, the fact that

Reese came out shortly after his conviction and sentence," and the fact that, had Lujan been

charged after the Supreme Court of New Mexico decided United States v. Reese, mean that he

would not have been convicted.  See Tr. at 16:12-23 (White).  The Court asked whether the United

States disagrees with Lujan's theory, because it seems that "your office is resisting retrials on the

basis of Rehaif and saying different things in different situations, but basically saying that Tenth

Circuit law does not require a retrial of those cases."  Tr. at 17:4-8 (Court).  The United States

noted that it is not in a position to say what its office's position is on Rehaif v. United States, and

that it can only speak to this case.  See Tr. at 17:11-17 (White).  The Court responded by asking

the United States to submit subsequent briefing on the United States' position on Rehaif v. United

States, in this case, especially when compared to its position in United States v. Apache Young,

No. CR 17-0694.  See Tr. at 18:18-19:6 (Court).  The Court noted that, in United States v. Apache

Young, No. CR 17-0694, "the appellate attorneys had assured me that they would defend [my]

decision to deny the new trial in that case and would not concede error at the Tenth Circuit," and

that if "now we're changing things . . . I'd like to know."  Tr. at 18:3-10 (Court).  The Court stated

that it was "troubled" with the fact that the United States is "thinking up a theory that is not in"

Lujan's brief.  Tr. at 19:6-7 (Court).  The Court wondered if "the Department of Justice is going

to start thinking up theories that give to the . . . defendants" ways to get coram nobis granted.  Tr.

at 20:15-16 (Court).  In response, the United States contended that Lujan addresses Rehaif v.

United States, in his brief, too.  See Tr. at 20:1-8 (White).  The United States noted that it has "an

office wide or DOJ policy regarding Coram Nobis petitioners [that] . . . [allows for] a case by case

factual analysis," and that it believes that "this particular case in particular[,] with the Reese case

in mind[,] is what really led to our motivation to not oppose it."  Tr. at 20:18-23 (White).

Lujan stated that he raised United States v. Reese, in his Petition, but that he does not see Rehaif v. United States and United States v. Reese as offering two separate theories.  See Tr. at 21:1-8(Elsenheimer).  Lujan then addressed the Court's concern about United States v. Apache Young, No. CR 17-0694, and argued that there are "different factual circumstances underlying the separate cases as they pertain to the Rehaif issue" and that "the aspect of knowledge could be different." Tr. at 21:25-3 (Elsenheimer).  Lujan stated that he does not think that the United States' position in this case would have any effect on its position in United States v. Apache Young, No. CR 17-0694, because they are "two entirely separate cases." Tr. at 22:19-11 (Elsenheimer).  The hearing concluded with the Court noting that it would try to get an opinion written as soon as possible, but that Lujan is not in custody and "I've got a lot of guys with liberty interests" who may take priority.  Tr. at 23:17-18 (Court).  The Court told Lujan to "tell me my time is up" if the Court is taking too long.  Tr. at 23:21 (Court).

### 4.    The United States' Supplemental Briefing.

In response to the Court's request at the hearing that the United States clarify its position on Rehaif v. United States, the United States filed supplemental briefing.  See United States' Supplemental Briefing in Response to the Court's Oral Order, filed November 13, 2020 (Doc. 74)("Supplement").  In the Supplement, the United States notes that it "has conferred with the necessary AUSAs" and has clarification on its position on Rehaif v. United States.  Supplement at 1.  According to the United States, Rehaif v. United States means that,

> to convict a defendant of being a prohibited person in possession of a firearm in violation of 18 U.S.C. § 922(g), the government "must show that the defendant knew he possessed a firearm *and also* that he knew he had the relevant status" -- that is, that he knew he was a prohibited person -- "when he possessed it."

Supplement at 1-2 (quoting Rehaif v. United States, 139 S. Ct. at 2194)(emphasis in Supplement, but not in Rehaif v. United States).

The United States explains that it agrees with Lujan that the Supreme Court of New Mexico's decision in United States v. Reese "bears upon Mr. Lujan's coram nobis petition," but asserts that Lujan's larceny conviction was valid when it happened.  Supplement at 3.  The United States argues that, here, "Mr. Lujan received a deferred sentence for his New Mexico conviction for larceny, he completed the conditions for deferment, the conviction was dismissed, and his civil rights were restored," meaning that, under United States v. Reese, Lujan's larceny conviction "could no longer serve as a predicate felony under § 922(g)(1)."  Supplement at 4.  The United States admits, however, that United States v. Reese came out after Lujan was convicted and sentenced and is "not retroactive from a purely technical perspective."  Supplement at 4.  The United States nevertheless maintains that "opposing coram nobis relief would no longer be a just course of action under the circumstances."  Supplement at 4.

The United States notes that it disagrees with Lujan's Rehaif v. United States analysis.  See Supplement at 4.  According to the United States, Lujan's reliance on Rehaif v. United States is a "red herring that does not (or at least should not) affect coram nobis relief," because United States v. Reese is the "true lynchpin on this case."  Supplement at 4.  The United States argues that the "pertinent issue" is whether Lujan's state larceny conviction would today not be a predicate felony for § 922(g)(1)'s purposes and not whether Lujan knew he was a felon when he received his § 922(g)(1) conviction.  Supplement at 4.  The United States asserts that its decision not to oppose coram nobis relief for Lujan has "nothing to do" with Rehaif v. United States and that, if Lujan were relying only on Rehaif v. United States the United States would oppose relief.  Supplement at 5.

## LAW REGARDING CORAM NOBIS

The writ of coram nobis "was available at common law to correct errors of fact."  United

States v. Morgan, 346 U.S. 502, 507 (1954).  Today, the All Writs Act, 28 U.S.C § 1651, provides

federal courts jurisdiction to grant relief in the form of a writ of error coram nobis.  See United

States v. Morgan, 346 U.S. at 507.  A writ of error coram nobis affords a petitioner a remedy to

attack a conviction when the petitioner has served his sentence and is no longer in custody.  See

United States v. Kwan, 407 F.3d 100 5, 1011 (9th Cir. 2005).  Coram nobis is an "extraordinary

remedy" available "only under circumstances compelling such action to achieve justice."  United

States v. Morgan, 346 U.S. at 511.  Before a court may grant a writ of coram nobis: (i) a petitioner

must satisfy his or her burden of demonstrating that he or she was duly diligent in bringing a claim;

(ii) all other remedies and forms of relief, including post-conviction relief under 28 U.S.C. § 2255,

are unavailable or inadequate; and (iii) the requested writ either must correct errors resulting in a

complete miscarriage of justice or be under circumstances compelling such action to achieve

justice. See Embrey v. United States, 240 F. App'x 791, 793 (10th Cir. 2007)(unpublished)[3]; Klein

---

[3]Embrey v. United States is an unpublished opinion, but the Court can rely on an Tenth
Circuit unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.
See 10th Cir. R. 32.1(A)("Unpublished decisions are not precedential, but may be cited for their
persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . And we have
> generally determined that citation to unpublished opinions is not favored.
> However, if an unpublished opinion or order and judgment has persuasive value
> with respect to a material issue in a case and would assist the court in its disposition,
> we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that Embrey
v. United States, United States v. Donjuan, 720 F. App'x 486, 489 (10th Cir. 2018)(unpublished),
United States v. Thody, 460 F. App'x 776 (10th Cir. 2012)(unpublished), United States v. Gaddis,
200 F. App'x 817, 818 (10th Cir. 2006), United States v. Ballard, 317 F. App'x 719, 722 (10th
Cir. 2008)(unpublished), United States v. Lowe, 6 F. App'x 832, 834 (10th Cir.
2001)(unpublished), United States v. Fraizer-LeFear, 665 F. App'x 727, 729 (10th Cir.
2016)(unpublished), Prevette v. Gunja, 167 F. App'x 39, 44 (10th Cir. 2006)(unpublished), United
States v. Miles, 546 F. App'x 730, 734 (10th Cir. 2012)(unpublished), and United States v. Reese,
505 F. App'x 733, 735 (10th Cir. 2012)(unpublished), have persuasive value with respect to a
material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

v. United States, 880 F.2d 250, 254 (10th Cir. 1989).   A defendant must show that: (i)  there was

a factual error; (ii)  the fact was unknown at the time of trial; and (iii)  the fact is of a fundamentally

unjust character which would have altered the outcome of the challenged proceeding had it been

known.  See United States v. Donjuan, 720 F. App'x 486, 489 (10th Cir. 2018)(unpublished); Klein

v. United States, 880 F.2d at 254.

To show due diligence in bringing a claim, a coram nobis petitioner must provide sound

reasons explaining why a petitioner did not attack his or her sentences or convictions earlier.  See

United States v. Morgan, 346 U.S. at 512; United States v. Thody, 460 F. App'x 776 (10th Cir.

2012)(unpublished)("He cannot demonstrate diligence in pursuing his claim when he waited 15

years after the Supreme Court's decision in Bailey v. United States, 516 U.S. 137 (1995), to file

his petition."); Klein v. United States, 880 F.2d at 254 (holding that the petitioner failed to exercise

due diligence after he waited seven years to bring his coram nobis petition.); United States v.

Gaddis, 200 F. App'x 817, 818 (10th Cir. 2006)(unpublished)(affirming the district court's denial

of the petitioner's motion for a wait of coram nobis after he waited "almost two years after his

release from prison to file the motion[,] [the petitioners only reason] was that he had been unable

to find an attorney to represent him").  With the exception of actual innocence, courts have not

elaborated on what constitutes "sound" or "valid" reasons for delay, although courts have

described circumstances that provide valid reasons for delay.  See e.g., United States v. Gonzalez,

CR 03-20136-01-KHV, 2016 WL 2989146 (D. Kan. May 24, 2016)(Vratil J.)(holding that the

"defendant's lack of diligence in pursing his claim does not bar the present motion for a writ of

coram nobis"); United States v. Peter, 310 F.3d 709, 712 (11th Cir. 2002)(explaining that a "writ

of error coram nobis acts as assurance that deserved relief will not be denied because of technical

limitations of other post-conviction remedies"); Restrepo v. United States, CIV 12-3517 JBS, 2012

WL 5471151, at *9 (D.N.J. Nov. 8, 2012)(Simandle J.)("[actual innocence constitutes] an extraordinary case that [can] negate . . . procedural default [of coram nobis petition]."). Courts have denied relief where the coram nobis petitioner has delayed for no reason whatsoever, where the respondent demonstrates prejudice, or where the petitioner appears to be abusing the writ. See Martinez v. United States, 90 F. Supp. 2d 1072, 1075-77 (D. Haw. 2000)(Kay J.)(denying relief where the petitioner attacked a six-year-old conviction on grounds of speedy trial violations, failed to collaterally challenge the conviction while in custody and until six years after receiving an enhanced sentence for a subsequent conviction); Klein v. United States, 880 F.2d at 254 (denying relief where the petitioner delayed seeking coram nobis relief for seven years without an explanation, the delay caused prejudice to the government because a key witness died, and the petitioner was raising claims that had already been litigated); United States v. Correa-De Jesus, 708 F.2d 1283, 1286 (7th Cir. 1983)(denying relief where the petitioner waited sixteen years to re-litigate claim that he had raised and then dropped on direct appeal); Maghe v. United States, 710 F.2d 503, 503-04 (9th Cir. 1983)(denying relief where the petitioner delayed for twenty-five years and offered no explanation for doing so). Additionally, where petitioners reasonably could have asserted the basis for their coram nobis petition earlier, they have no valid justification for delaying pursuit of that claim. See United States v. Ballard, 317 F. App'x 719, 722 (10th Cir. 2008)(unpublished). If petitioners did not have a reasonable chance to pursue his or her claim earlier because of the specific circumstances they faced, delay during the time when such circumstances existed may be justified. See Hirabayashi v. United States, 828 F.2d 591, 605 (9th Cir. 1987); United States v. Kwan, 407 F.3d 1005, 1015 (9th Cir. 2005).

A coram nobis petitioner shows that a more usual remedy is not available by establishing that he or she is not in custody and, as a result, is ineligible for habeas relief or § 2255 relief. See

United States v. Miles, 923 F.3d 798, 802 (10th Cir. 2019)(citing Chaidez v. United States, 568 U.S. 342, 345 (2013)), cert. denied, 140 U.S. 470 (2019).   A coram nobis petition should be rejected if the "claim was raised or could have been raised on direct appeal or through a § 2255 motion, or in any other prior collateral attack on the conviction or sentence."   United States v. Miles, 923 F.3d at 804.   Nevertheless, that a coram nobis petitioner could have raised a claim while in custody does not bar the petitioner from coram nobis eligibility.   See United States v. Morgan, 346 U.S. 502, 512 (1954)(concluding that the petitioner met the threshold requirement for coram nobis relief even though the petitioner could have raised denial of counsel claim by filing § 2255 motion while incarcerated).   Additionally, a petitioner cannot use coram nobis to reach issues that the petitioner could have raised on direct appeal or to litigate issues already litigated.   See Barnickel v. United States; 113 F.3d 704, 706 (7th Cir. 1997); Klein v. United States, 880 F.2d at 254.

Finally, "the burden is on the petitioner to demonstrate that the asserted error is jurisdictional or constitutional and results in a complete miscarriage of justice." Klein v. United States, 880 F.2d at 254.   See United States v. Morgan, 346 U.S. at 511 ("This extraordinary remedy [should] only under circumstances compelling such action to achieve justice.").   Generally, courts will issue writs of coram nobis only to correct "errors of fact" that, through no negligence on the defendant's part, were not part of the original record and that "would have prevented rendition of the judgment questioned."   United States v. Lowe, 6 F. App'x 832, 834 (10th Cir. 2001)(unpublished)(quoting Black's Law Dictionary 304-05 (5th Ed. 1979)).   The United States Court of Appeals for the Seventh Circuit has held that, when alleging newly discovered evidence, the petitioner must show that the petitioner's due diligence could not have revealed the evidence before trial and that the evidence would likely have led to a different result.   See United States v.

Scherer, 673 F.2d 176, 178 (7th Cir. 1982).  When a person cannot bring a § 2255 petition because

he or she is no longer in federal custody, therefore, federal courts may entertain coram nobis

petitions in "extraordinary cases presenting circumstances compelling its use to achieve justice."

Rawlins v. Kansas, 714 F.3d 1189, 1196 (10th Cir. 2013)(citing United States v. Denedo, 556 U.S.

904, 911 (2009)).

### LAW REGARDING HABEAS CORPUS PETITIONS UNDER 28 U.S.C. § 2254

Section 2254 provides: "a district court shall entertain an application for a writ of habeas

corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground

that he is in custody in violation of the Constitution or laws or treaties of the United States."

28 U.S.C. § 2254(a).  When a state prisoner challenges his custody and by way of relief seeks to

vacate his sentence, and obtain immediate or speedy release, his sole federal remedy is a writ of

habeas corpus.  See Preiser v. Rodriguez, 411 U.S. 475, 500 (1973); Henderson v. Sec'y of Corr.,

518 F.2d 694, 695 (10th Cir. 1975).  Under 28 U.S.C. § 2244(b)(1), a court shall dismiss a claim

that the movant presents in a second or successive habeas corpus application under § 2254.  See

Coleman v. United States, 106 F.3d 339, 341 (10th Cir. 1997).  A court also shall dismiss a new

claim that the movant has not presented in a prior application unless a petitioner shows either:

(i) that the claim relies on a new rule of constitutional law that was previously unavailable and that

the Supreme Court of the United States made retroactive to cases on collateral review; or (ii) that

the factual predicate for the claim was previously unavailable and would be sufficient to establish

by clear-and-convincing evidence that, but for constitutional error, no reasonable factfinder would

have found the applicant guilty of the underlying offense.  See 28 U.S.C. § 2244(b)(2).  To proceed

on a second or successive habeas corpus petition, a petitioner must establish one of two bases.  The

petitioner must show that he is relying on new constitutional law that was previously unavailable

and that the Supreme Court made retroactive on collateral review.  <u>See</u> 28 U.S.C. § 2244(b)(2)(A);

<u>Tyler v. Cain</u>, 533 U.S. 656, 661-62 (2001).  Alternatively, the petitioner must argue or rely on a

factual predicate that could not have been discovered previously through the exercise of due

diligence, and is sufficient to establish by clear-and-convincing evidence that, but for

constitutional error, no reasonable factfinder would have found the applicant guilty of the

underlying offense.  <u>See</u> 28 U.S.C. § 2244(b)(2)(B); <u>United States v. Espinosa-Saenz</u>, 235 F.3d

501, 505 (10th Cir. 2000).

Further, before the petitioner files a second or successive petition in the district court, the

petitioner must move the Court of Appeals for an order authorizing the district court to consider

the application.  <u>See</u> 28 U.S.C. § 2244(b)(3)(A).  When a petitioner files a second or successive

§ 2254 claim in the district court without the Court of Appeals' authorization, the district court

may transfer the matter to the Court of Appeals if it determines it is in the interest of justice to

transfer under 28 U.S.C. § 1631, or it may dismiss the petition for lack of jurisdiction.  <u>See</u> <u>In re</u>

<u>Cline</u>, 531 F.3d 1249, 1252 (10th Cir. 2008).  <u>See also</u> <u>Coleman v. United States</u>, 106 F.3d at 341.

When a petitioner files a motion under rule 60(b), the Court must determine whether the

motion is a true rule 60(b) motion, or, instead, a second or successive petition under § 2254.  <u>See</u>

<u>Spitznas v. Boone</u>, 464 F.3d 1213 (10th Cir. 2006).  A 60(b) argument should not be treated as a

second or successive § 2254 claim if it "challenges a defect in the integrity of the federal habeas

proceedings," and "does not itself lead inextricably to a merits-based attack on the disposition of

the prior habeas petition."  <u>Spitznas v. Boone</u>, 464 F.3d at 1216.  A rule 60(b) motion should,

instead, be treated as a second or successive § 2254 petition "if it in substance or effect asserts or

reasserts a federal basis for relief from the petitioner's underlying conviction."  <u>Spitznas v. Boone</u>,

464 F.3d at 1216.

## LAW REGARDING 28 U.S.C. § 2255

Section 2255 provides:

> A prisoner in custody under a sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). The petitioner is to file the initial motion under 28 U.S.C. § 2255 with the court that imposed the sentence for that court's consideration. See Browning v. United States, 241 F.3d 1262, 1264 (10th Cir. 2001). Rule 4(b) of the Rules Governing Section 2255 Proceedings states:

> The judge who receives the motion must promptly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party.

Rules Governing Habeas Proceedings 4(b). Section 2255 provides that a United States Court of Appeals panel must certify a second or successive motion in accordance with § 2244 to contain: (i) newly discovered evidence that would be sufficient to establish by clear-and-convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or (ii) a new rule of constitutional law that was previously unavailable and the Supreme Court made retroactive to cases on collateral review. See 28 U.S.C. § 2255(h). Section 2244 requires that, before a second or successive application is filed in the district court, the applicant shall move the appropriate court of appeals for an order authorizing the district court to consider the application. See 28 U.S.C. § 2244(b)(3)(A). A district court lacks jurisdiction to consider a second or successive motion absent the requisite authorization. See 28 U.S.C. § 2244(b).

## LAW REGARDING 18 U.S.C. § 922(g)(1)

The effective date of 18 U.S.C. § 922(g)(1) is December 16, 1968. 18 U.S.C. § 922. Section

922(g)(1) provides that:

> (g)     It shall be unlawful for any person—
>
> (1)     who has been convicted in any court of, a crime punishable by
>
> imprisonment for a term exceeding one year . . .

> to ship or transport in interstate or foreign commerce, or possess in or affecting commerce,
> any firearm or ammunition; or to receive any firearm or ammunition which has been
> shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1). "The elements of the crime of possession of a firearm by a convicted felon

as described in 18 U.S.C. § 922(g)(1) are as follows: [(i)] The defendant was convicted of a felony;

[(ii)] Thereafter the defendant knowingly possessed a firearm; and [(iii)] The defendant's

possession of the firearm was in or affecting commerce." United States v. Shunk, 881 F.2d 917,

921 (10th Cir. 1989).  To be convicted of violating § 922(g)(1), a defendant need not have known

that it was illegal for a felon to possess a firearm; "the only knowledge required for a § 922(g)[1]

conviction is knowledge that the instrument possessed [was] a firearm." United States v. Capps,

77 F.3d 350, 352 (10th Cir.1996)(internal quotations and citations omitted).  18 U.S.C. § 922(g)(1)

is a statute of general applicability.  See United States v. Gallaher, 275 F.3d 784, 788 (9th

Cir.2001)(citing United States v. Young, 936 F.2d 1050, 1055 (9th Cir.1991)).

In United States v. Rehaif, 139 S. Ct. 2191 (2019), the Supreme Court for the United States

of America concluded that, for prosecutions under 18 U.S.C. §§ 922(g) and 924(a)(2), "[t]he

Government must prove that the defendant knew he possessed a firearm and that he knew he

belonged to the relevant category of persons barred from possessing a firearm." In United States

v. Rehaif, 139 S.Ct. at 2200.  In United States v. Benton, 988 F.3d 1231 (2021), the United States

Court of Appeals for the Tenth Circuit concluded that, in a prosecution under 18 U.S.C. §§ 922(g)

and 924(a)(2), the United States does not have to prove that "a defendant knew his status under

§ 922(g) prohibited from possessing a firearm." United States v. Benton, 988 F.3d at 1233. After

the Supreme Court's decision in United States v. Rehaif, the Tenth Circuit concludes that "the only

knowledge required for conviction is that the defendant knew (1) he possessed a firearm[4] and (2)

had the relevant status under § 922(g) at the time of his possession." United States v. Benton, 988

F.3d at 1233 (citing United States v. Rehaif, 139 S. Ct. 2191)(footnote in original).

## LAW REGARDING 18 U.S.C. § 924

Section 924 of Title 18 of the United States Code provides penalties for crimes of violence

involving firearms. Section 924(c)(1)(A) states:

> Except to the extent that a greater minimum sentence is otherwise provided
> by this subsection or by any other provision of law, any person who, during and in
> relation to any crime of violence or drug trafficking crime (including a crime of
> violence or drug trafficking crime that provides for an enhanced punishment if
> committed by the use of a deadly or dangerous weapon or device) for which the
> person may be prosecuted in a court of the United States, uses or carries a firearm,
> or who, in furtherance of any such crime, possesses a firearm, shall, in addition to
> the punishment provided for such crime of violence or drug trafficking crime --
>
> (i)      be sentenced to a term of imprisonment of not less than 5 years;
>
> (ii)     if the firearm is brandished, be sentenced to a term of imprisonment of not
>          less than 7 years; and
>
> (iii)    if the firearm is discharged, be sentenced to a term of imprisonment of not
>          less than 10 years.

18 U.S.C. § 924(c)(1)(A). The statute provides the definition for "crime of violence":

> (3)      For purposes of this subsection the term "crime of violence" means an

---

[4] The knowledge that the defendant is in possession of a firearm also requires that the
defendant know the object he possesses is a firearm. See Rehaif v. United States, 139 S. Ct. at
2196 (2019).

offense that is a felony and --

(A)    has as an element the use, attempted use, or threatened use
of physical force against the person or property of another,
or

(B)    that by its nature, involves a substantial risk that physical
force against the person or property of another may be used
in the course of committing the offense.

18 U.S.C. § 924(c)(3).  Courts have titled the first clause, 18 U.S.C. § 924(c)(3)(A), the "elements clause," and the second clause, 18 U.S.C. § 924(c)(3)(B), the "residual clause."  E.g., United States v. Davis, 139 S. Ct. at 2325.  Because the residual clause is "almost identical" to clauses in related statutes, United States v. Davis, 139 S. Ct. at 2325 (discussing the similarity between the residual clauses in the Armed Career Criminal Act and the Immigration and Nationality Act), courts have interpreted these clauses in a consistent manner, see United States v. Davis, 139 S. Ct. at 2329 (stating that "the same language in related statutes carries a consistent meaning").  The key similar features are "an ordinary-case requirement and an ill-defined risk threshold -- combined in the same constitutionally problematic way."  Sessions v. Dimaya, 138 S. Ct. 1204, 1207 (2018).  The Tenth Circuit generally uses the "categorical approach"[5] when deciding whether a predicate

---

[5]The categorical approach is not without critics.  The approach's focus on statutory convictions rather than on actual conduct has led some judges to characterize it as a "judicial charade," Ovalles v. United States, 905 F.3d 1231, 1253 (11th Cir. 2018)(Pryor, J., concurring), and note that the categorical approach "require[s] that judges ignore the real world," United States v. Chapman, 866 F.3d 129, 136 (3d Cir. 2017)(Jordan, J., concurring).  Justice Thomas recently called the approach "an absurdity."  Quarles v. United States, 139 S. Ct. 1872, 1880 (2019)(Thomas, J., concurring).  The Honorable J. Harvie Wilkinson, United States Circuit Judge for the United States Court of Appeals for the Fourth Circuit, described the categorical approach as "a protracted ruse for paradoxically finding even the worst and most violent offenses not to constitute crimes of violence," United States v. Doctor, 842 F.3d 306, 313 (4th Cir. 2016)(Wilkinson, J., concurring), and pleads: "Heaven help us," United States v. McCollum, 885 F.3d 300, 314 (4th Cir. 2018)(Wilkinson, J., dissenting).
Although Justice Alito has described the categorical approach as a recent judicial invention, see Chambers v. United States, 555 U.S. 122, 132 (2009)(Alito, J., concurring)("[O]nly Congress can rescue the federal courts from the mire into which . . . [United States v. Taylor, 495 U.S. 575

(1990)]'s 'categorical approach' have pushed us."), the interpretive canon dates at least to 1891, when Congress provided that noncitizens were removable on the basis of criminal conviction involving moral turpitude, see Act of Mar. 3, 1891, ch. 551, § 1, 26 Stat. 1084, 1084.  Courts interpreted this provision as requiring examination not of an offense's facts, but rather of the statute of conviction.  See, e.g., United States ex rel. Guarino v. Uhl, 107 F.2d 399, 400 (2d Cir. 1939)("[D]eporting officials may not consider the particular conduct for which the [noncitizen] has been convicted."); United States ex rel. Mylius v. Uhl, 210 F. 860, 863 (2d Cir. 1914)(explaining that whether a crime involves moral turpitude "must be determined from the judgment of conviction and not from the testimony adduced at the trial"); Alina Das, The Immigration Penalties of Criminal Convictions: Resurrecting Categorical Analysis in Immigration Law, 86 N.Y.U. L. Rev. 1669, 1689 (2011).  Further, the categorical approach's proponents note that Congress typically requires the categorical approach in relevant statutes.  See United States v. Davis, 139 S. Ct. at 2328 ("It's not even close; the statutory text commands the categorical approach."); Mathis v. United States, 136 S. Ct. at 2552; Taylor v. United States, 495 U.S. at 600-01.  Finally, the Supreme Court says that the categorical approach avoids practical challenges in reviewing, as is the case here, decades-old conviction records.  See Moncrieffe v. Holder, 569 U.S. 184, 200-01 (2013).

> The factual approach . . . would transform the sentencing hearing into a series of mini-trials in which the defendant rehashes his version of the events that led to his predicate convictions and the prosecution searches for stale evidence to prove an element that was necessarily proved or admitted at the prior proceeding.

United States v. Wilson, 951 F.2d 586, 590 (4th Cir. 1991).  Similarly, two defendants with identical conduct could face very different sentencing results depending on the detail that each's sentencing record provides.

The Supreme Court has also held that the categorical approach safeguards constitutional interests: the Sixth Amendment to the Constitution of the United States of America generally prohibits the sentencing judge from determining facts underlying a prior conviction to determine a sentencing enhancement's applicability, because "only a jury, and not a judge, may find facts that increase a maximum penalty, except for the simple fact of a prior conviction."  Mathis v. United States, 136 S. Ct. at 2252.  The categorical approach thus requires that prior-conviction enhancements rest on legally defined predicate convictions.  See Mathis v. United States, 136 S. Ct. at 2252.  The Supreme Court has also noted that the approach safeguards rights to fair notice that the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution guarantee, see Mathis v. United States, 136 S. Ct. at 2253, because, "at the time that a defendant decides to plead guilty to a [predicate] crime, the defendant would likely have no real notice of the potentially severe federal consequences of a decision not to challenge the [government's] characterization of the defendant's underlying conduct," United States v. Faust, 853 F.3d 39, 64 (1st Cir. 2017)(Barron, J., concurring).  Accordingly, the categorical approach may, in some instances, yield absurd results, but the Supreme Court has concluded that those results are the cost of achieving the best systemic outcome.

Nonetheless, it is evident that the categorical approach subverts Congressional intent to enhance sentences for repeat, violent offenders, even where it is clear that a defendant's predicate conviction factually rests on a violent crime.  The categorical approach invites post hoc

offense qualifies as a crime of violence under 18 U.S.C. § 924(c)(3)(b), as long as the statute of conviction is indivisible.  United States v. Melgar-Cabrera, 892 F.3d at 1061.  See United States v. Bowen, 936 F.3d at 1102.  When the court uses the categorical approach to determine whether the predicate act is a crime of violence, the court looks "'only to the fact of conviction and the statutory definition of the prior offense, and do not generally consider the particular facts disclosed by the record of conviction.'"  United States v. Bowen, 936 F.3d at 1102 (quoting United States v. Serafin, 562 F.3d 1105, 1107-08 (10th Cir. 2009))(quotations omitted in original).  The Supreme Court has described elements as that which the prosecution must necessarily prove at trial or to which the defendant must plead "'to sustain a conviction.'"  Mathis v. United States, 136 S. Ct. at 2248 (quoting Black's Law Dictionary at 634 (10th ed. 2014)).  Alternatively, the Supreme Court has described facts, in the categorical context, as "mere real-world things -- extraneous to the crime's legal requirements . . . .  They are 'circumstance[s]' or 'event[s]' having no 'legal effect [or] consequence'" that "need neither be found by a jury nor admitted by a defendant."  Mathis v. United States, 136 S. Ct. at 2248 (quoting Black's Law Dictionary at 709))(alterations in Mathis v. United States).  Using the categorical approach, the court compares the "scope of conduct covered by the elements of the crime" with the statute's "'definition of crime of violence.'"  United States v. O'Connor, 874 F.3d at 1151 (quoting U.S.S.G. § 4B1.2(a)).

"Some statutes, however, have a more complicated (sometimes called 'divisible') structure, making the comparison of elements harder. . . .  A single statute may list elements in the alternative, and thereby define multiple crimes."  Mathis v. United States, 136 S. Ct. at 2249.  The

---

counterfactuals that allow judges to vacate sentences that are clearly based on violent crimes.  "The upshot of this 'counterintuitive' exercise, see Mathis, 136 S. Ct. at 2251, is that the categorical approach can serve as a protracted ruse for paradoxically finding even the worst and most violent offenses not to constitute crimes of violence."  United States v. Doctor, 842 F.3d at 313 (Wilkinson, J., concurring).

court must modify the categorical approach "in a narrow range of cases where the statute of conviction is divisible" -- meaning that the statute's subparts describe alternative crimes as opposed to different ways of committing the same offense.  United States v. Pam, 867 F.3d 1191, 1203 (10th Cir. 2017)(citing Descamps v. United States, 133 S. Ct. at 2281).  If the statute is divisible, this "modified categorical approach" allows the court to "consult record documents from the defendant's prior case for the limited purpose of identifying which of the statute's alternative [crimes] formed the basis of the prior conviction."  United States v. Titties, 852 F.3d at 1266.  Once identified, the Court "compares those elements" of the alternative crime to the statute's definition of "crime of violence" as it would under the categorical approach.  United States v. Titties, 852 F.3d 1266 (quoting Descamps v. United States, 133 S. Ct. at 2281).  See United States v. Henry, No. CR 11-2660 JB, 2017 WL 6729963, at *4 (D.N.M. Dec. 31, 2017)(Browning, J.).

The reviewing court must decide the statutory provision on which the sentencing court relied for conviction.  See United States v. Driscoll, 892 F.3d at 1135.  The Tenth Circuit has stated that the movant carries the burden at the merits stage of the movant's first § 2255 challenge to prove that it is "'more likely than not'" that the sentencing court used the residual clause as the basis of sentencing.  See United States v. Driscoll, 892 F.3d at 1135 (quoting from and adopting the test of Beeman v. United States, 871 F.3d 1215, 1221-22 (11th Cir. 2017)).

## ANALYSIS

First, the Court will consider the Petition, because Lujan has not waived expressly his right to attack collaterally his conviction through a coram nobis petition, and, because, if Lujan is correct that his sentence is unlawful, enforcing his collateral-attack waiver would result in a miscarriage of justice.  Second, Lujan is not entitled to a writ of coram nobis, because there is no factual error in Lujan's 2012 felon-in-possession conviction and, although he may take advantage of United

States v. Reese on collateral review, he may not take advantage of Rehaif v. United States.  In

other words, Magistrate Judge Garcia's failure to inform Lujan that, to convict him of being a

felon-in-possession, the United States would have to prove that Lujan knew he was a convicted

felon, was a legal error only.  Further, Lujan is not entitled to a writ of coram nobis, because,

although United States v. Reese would dictate a different outcome in Lujan's case, it does not state

a new rule, and would, in the absence of a collateral-attack waiver, if brought timely on a petition

for a writ of habeas corpus, have entitled him to relief, Lujan was not diligent in bringing his

Petition and is not actually innocent.  Because Lujan asserts only legal error, he is not entitled to a

writ of coram nobis.  Writs of coram nobis, unlike writs of audita querela, are for granting relief

for factual errors in the original conviction.  See Klein v. United States, 880 F.2d at 253; Rawlins

v. Kansas, 714 F.3d 1189, 1193 (10th Cir. 2013); United States v. Torres, 282 F.3d 1241, 1245 n.6

(10th Cir. 2002).

## I.     THE COURT MAY CONSIDER LUJAN'S PETITION, BECAUSE LUJAN DID NOT WAIVE HIS CORAM NOBIS RIGHTS, AND BECAUSE ENFORCING LUJAN'S COLLATERAL-ATTACK WAIVER WOULD RESULT IN A MISCARRAIGE OF JUSTICE.

Lujan's Plea Agreement contains a collateral-attack waiver.  See Plea Agreement at 7.

Lujan contends that his collateral-attack waiver does not bar the Court from considering his

Petition, because it "does not expressly mention the right to file a petition for a writ of coram

nobis" and, even if it covers coram nobis, it "falls within a recognized exception within which a

waiver is unenforceable."  Petition at 10 (emphasis in Petition).  Lujan argues that his "collateral-

attack waiver cannot be enforced because his conviction is illegal."  Petition at 11.

Collateral-attack waivers are "generally enforceable where the waiver is expressly stated

in the plea agreement and where both the plea and the waiver were knowingly and voluntarily

made."  United States v. Cockerham, 237 F.3d 1179, 1183 (10th Cir. 2001).  The same exceptions

to appeal waivers apply to collateral-attack waivers.  See United States v. Viera, 674 F.3d 1214, 1217 (10th Cir. 2012).  As a result, collateral-attack waivers preclude collateral attack when: (i) the dispute falls within the collateral-attack waiver's scope; (ii) the defendant knowingly and voluntarily waived his collateral-attack rights; and (iii) enforcing the waiver would not result in a miscarriage of justice.  See United States v. Hahn, 359 F.3d 1315, 1326 (10th Cir. 2004)(en banc).  A miscarriage of justice occurs when: (i) the district court relied on an impermissible factor, such as race; (ii) ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid; (iii) the sentence exceeds the statutory maximum; or (iv) the waiver is otherwise unlawful.  See United States v. Hahn, 359 F.3d at 1327.  The error that makes a waiver unlawful must "'seriously affect the fairness, integrity or public reputation of judicial proceedings, as that test was employed [for plain-error review] in United States v. Olano, 507 U.S. 725, 732 (1993).'"  United States v. Fraizer-LeFear, 665 F. App'x 727, 729 (10th Cir. 2016)(unpublished)(quoting United States v. Hahn, 359 F.3d at 1327)(alteration in United States v. Fraizer-LeFear, and not in United States v. Hahn).

Lujan's Plea Agreement states: "In addition, the Defendant agrees to waive any collateral attack to the Defendant's conviction pursuant to 28 U.S.C. § 2255, except on the issue of counsel's ineffective assistance in negotiating or entering this plea or this waiver."  Plea Agreement at 7. Lujan's collateral-attack waiver does not bar his coram nobis petition for two reasons.  First, Lujan's collateral-attack waiver does not expressly include coram nobis.  See Plea Agreement at 7.  Lujan brings his coram nobis petition under the All Writs Act, 28 U.S.C. § 1651, and not under 28 U.S.C. § 2255.  See Petition at 7.  Moreover, courts must "indulge every reasonable presumption against waiver" of constitutional rights.  Johnson v. Zerbst, 304 U.S. 458, 464 (1938). See Bousley v. United States, 523 U.S. 614, 618 (1998)("A plea of guilty is constitutionally valid

only to the extent it is 'voluntary' and 'intelligent.'")(quoting <u>Brady v. United States</u>, 397 U.S. 742, 748 (1970).

Second, even if Lujan's collateral-attack waiver includes coram nobis, enforcing it would result in a miscarriage of justice. In effect, Lujan argues that Magistrate Judge Garcia did not inform him that, to convict him of violating 18 U.S.C. §§ 922(g)(1) and 924(a)(2), the United States would have to prove that he knew he was a felon even though he was not a felon. <u>See</u> Petition at 5-7. The United States and Lujan agree that, today, Lujan's New Mexico larceny conviction "could no longer serve as a predicate felony under § 922(g)(1)." Supplement at 4. Lujan's conviction is for possessing a firearm with a State felony conviction whose sentence does not affect Lujan's civil rights, "an act that the law does not make criminal" today. <u>Davis v. United States</u>, 417 U.S. 333, 346 (1974). Convicting someone for something that the law does not make criminal "inherently results in a complete miscarriage of justice" and "present[s] exceptional circumstances" that justify collateral relief. <u>Davis v. United States</u>, 417 U.S. at 346. <u>See</u> <u>Bousley v. United States</u>, 523 U.S. 614, 613 (1988)(Stevens, J., concurring in part). Blocking Lujan from asserting that his conviction is unlawful when the parties agree that it would be unlawful today would affect seriously the fairness, integrity, or public reputation of judicial proceedings, because the federal courts' finality interests are "at their weakest" when a "conviction or sentence is in fact not authorized by substantive law." <u>Welch v. United States</u>, 578 U.S. 120, 131 (2016). <u>See</u> <u>Bonilla v. United States</u>, Nos. CR 07-0097, CV 16-3269, 2020 WL 489573, at *3 (E.D.N.Y. Jan. 19, 2020)(Johnson, J.). Moreover, coram nobis relief is available only when there has been a "complete miscarriage of justice." <u>Klein v. United States</u>, 880 F.2d at 253. Barring Lujan from asserting that there was a complete miscarriage of justice would affect seriously the judicial proceedings' fairness, integrity, and public reputation. The collateral-attack waiver in Lujan's Plea

Agreement, therefore, does not bar Lujan's coram nobis Petition.

## II.    LUJAN IS NOT ENTITLED TO A WRIT OF CORAM NOBIS.

Lujan argues that he is entitled to coram nobis relief, because Magistrate Judge Garcia's failure to inform Lujan that the United States would have to prove that he knew he was a convicted felon, which United States v. Rehaif requires, amounts to a fundamental error.  See Petition at 9. A petitioner is entitled to coram nobis relief if he or she demonstrates: (i) a factual error in his original conviction; (ii) that was unknown at the time of trial; (iii) of a fundamentally unjust character which would have altered the outcome of the challenged proceeding had it been known; and (iv) that he or she was duly diligent in bringing his claim.  See Klein v. United States, 880 F.2d at 253.   A writ of coram nobis is "available only when the asserted error constitutes 'a complete miscarriage of justice.'" United States v. Donjuan, 720 F. App'x at 489 (quoting Klein v. United States, 880 F.2d at 253).  The petitioner also must exhaust all other remedies.  See Klein v. United States, 880 F.2d at 253.

### A.    THERE IS NO FACTUAL ERROR, UNKNOWN AT THE TIME OR NOT.

First, Lujan has not demonstrated that there is a factual error in his conviction.  Neither the United States nor Lujan offers any argument on whether there is a fact issue.[6]  Citing the wrong

---

[6]In his Petition, Lujan argues that, to be entitled to a writ of coram nobis, a petition must show "three things": (i) "an explanation of why a *coram nobis* petitioner did not earlier seek relief from the judgment"; (ii) "a showing that the petitioner continues to suffer significant collateral consequences from the judgment"; and (iii) "a demonstration that an error of the most fundamental character occurred."  Petition at 8.  This test is not the Tenth Circuit's coram nobis standard. Lujan's test comes from United States v. Pruett, 21 F.3d 1123 (10th Cir. 1994)(table).  In United States v. Pruett, the Tenth Circuit states that coram nobis is "only available under circumstances compelling such action to achieve justice" and that "[t]hose circumstances include" the three situations listed above.  21 F.3d 1123 (table), at *1.  Lujan mistakenly treats the Tenth Circuit's description of various circumstances in which coram nobis relief might be appropriate for the Tenth Circuit's requirements that a petitioner must meet to be entitled to a writ of coram nobis. The Tenth Circuit's test comes primarily from Klein v. United States, 880 F.2d at 253.  In United States v. Pruett, the Tenth Circuit cites Klein v. United States, 880 F.2d at 254, noting in a

coram nobis standard, Lujan argues that his felon-in-possession conviction must be set aside under

Rehaif v. United States, because Magistrate Judge Garcia did not inform him of all the elements

the United States would need to prove to convict him, and that he "was not a felon" under United

States v. Reese.  Petition at 7.  The United States asserts that Lujan's reliance on Rehaif v. United

States is a "red herring that does not (or at least should not) affect coram nobis relief."  Response

at 4.  Because neither the United States nor Lujan raise any factual issues, neither theory is directly

relevant to the question whether to grant Lujan a writ of coram nobis.  Nevertheless, the Court will

analyze the United States' and Lujan's respective arguments to determine whether they warrant

granting Lujan a writ of coram nobis on other grounds.

　　　　Because both United States v. Reese and Rehaif v. United States were decided after Lujan's

August 3, 2012, felon-in-possession conviction, there is legal error in Lujan's conviction if either

United States v. Reese or Rehaif v. United States applies a settled rule or is available retroactively

on collateral review.  Although, on collateral review, Lujan may take advantage of both United

States v. Reese, because it applies a settled rule, and Rehaif v. United States, because it announces

a new, substantive rule and therefore applies retroactively, neither the United States nor Lujan

contends that there is any new factual information.  Magistrate Judge Garcia's failure to inform

Lujan that, under United States v. Reese and under Rehaif v. United States, the United States

needed to prove that Lujan knew he was a felon, even though Lujan was not, in fact, a convicted

felon for §§ 922 and 924's purposes, is a legal error, not a factual error.

---

parenthetical that "due diligence in seeking the writ is a prerequisite to relief."  United States v.
Pruett, 21 F.3d 1123 (table), at *1.  United States v. Pruett, therefore, does not offer a substitute
test for coram nobis relief, but follows Klein v. United States, 880 F.2d at 253-54, and offers
circumstances in which a writ of coram nobis may be warranted.  Here, the Court follows Klein v.
United States, 880 F.2d at 253-54.

Lujan may take advantage of United States v. Reese only if it applies an old or "settled rule" or is retroactive.[7]  Chaidez v. United States, 568 U.S. 342, 347 (2013).  New Mexico courts use the federal retroactivity standard from Teague v. Lane, 489 U.S. 288, 310 (1989).  See State v. Trammell, 2016-NMSC-030, ¶ 17, 387 P.3d 220, 225.  In New Mexico, if a case articulates an "old rule," then it "'applies both on direct and collateral review,'" but if the case creates a "'new rule, it generally applies only to cases that are still on direct review.'"  State v. Trammell, 2016-NMSC-030, ¶ 17, 387 P.3d at 225 (quoting State v. Ramirez, 2012-NMCA-057, ¶ 6, 278 P.3d 569).  New rules break new ground or impose a new obligation on the State, meaning that precedent that existed when the defendant's conviction became final did not dictate the case's result, when they are "flatly inconsistent with the prior governing precedent and is an explicit overruling of an earlier holding."  Kersey v. Hatch, 2010 NMSC-020, ¶ 16, 148 N.M. 381, 387, 237 P.3d 683, 689.  See State v. Trammell, 2016-NMSC-030, ¶ 17, 387 P.3d at 225.

New Mexico courts have not determined whether United States v. Reese applies on collateral review.  Because Lujan received a deferred sentence for his December 9, 2005, State larceny conviction, if United States v. Reese does not state a new rule, then Lujan does not -- and did not at the time -- have a predicate felony for his 2012 felon-in-possession conviction, because a "conviction . . . for which a person . . . has had civil rights restored shall not be considered a conviction" for a §§ 922 and 924's purposes.  18 U.S.C. § 921(g)(1).  If United States v. Reese is

---

[7]A petitioner may take advantage of a post-conviction decision on collateral review only if the decision applies a settled rule of constitutional law or, if it states a new rule of constitutional law, if it applies retroactively.  See Chaidez v. United States, 568 U.S. at 343.  If "the rule is new," then it is not available retroactively on collateral review unless it falls into either of the "two exceptions to nonretroactivity."  Smith v. Sharp, 935 F.3d 1064, 1984 (10th Cir. 2019).  The two exceptions are: (i) rules that change what conduct is punishable under substantive criminal law; and (ii) "watershed rules of criminal procedure."  Teague v. Lane, 489 U.S. at 311.  See United States v. Hopkins, 920 F.3d 690, 699 (10th Cir. 2019).

states a new rule, then Lujan's 2005 State larceny conviction is -- and was at the time -- a predicate

felony for his 2012 felon-in-possession conviction.  <u>United States v. Reese</u> does not impose any

new obligations on the State.  <u>See</u> 2014-NMSC-013, 326 P.3d 454.  In <u>United States v. Reese</u>, the

Supreme Court of New Mexico concludes that: "The New Mexico Legislature established the

deferred sentence as a means of judicial clemency.  As such, dismissal of the criminal charges

upon satisfaction of the conditions of deferment automatically restores a conviction felon's civil

rights by operation of law."  2014-NMSC-013, ¶ 50, 326 P.3d at 465.  Nowhere in <u>United States</u>

<u>v. Reese</u> does the Supreme Court in New Mexico suggest or insinuate that it is departing from the

New Mexico Legislature's intent or altering any existing rule or requirement.  To the contrary, the

Supreme Court of New Mexico states explicitly that, "because the Legislature did not explicitly

prohibit persons receiving deferred sentences from holding office, this Court should not override

what appears to be the clear understanding and intent."  <u>United States v. Reese</u>, 2014-NMSC-013,

¶ 43, 326 P.3d at 463.  There is no indication that <u>United States v. Reese</u>'s conclusion is "flatly

inconsistent" with prior precedents.  <u>Kersey v. Hatch</u>, 2010 NMSC-020, ¶ 16, 148 N.M. at 387,

237 P.3d at 689.  If the inconsistency were that apparent, the state of pre-<u>United States v. Reese</u>

law likely would have been sufficiently clear for the Tenth Circuit not to certify the question to

the Supreme Court of New Mexico.[8]  <u>United States v. Reese</u>, therefore, applies an old rule.  Lujan

may, therefore, take advantage of <u>United States v. Reese</u>'s benefits for his coram nobis Petition.

---

[8]Writing for the Tenth Circuit, the Honorable Neil M. Gorsuch, then-United States Circuit Judge for the Tenth Circuit, states that certification to the Supreme Court of New Mexico is warranted, because "[i]t is . . . a close question with persuasive arguments on both sides."  <u>United States v. Reese</u>, 505 F. App'x 733, 735 (10th Cir. 2012)(unpublished).  Then-Judge Gorsuch writes: "Not only can both sides claim statutory or constitutional authority favor them, decisional authority provides no clearly controlling guidance."  <u>United States v. Reese</u>, 505 F. App'x at 736-37.

In addition, Lujan can take advantage of Rehaif v. United States' benefits on collateral review. A petitioner "may avail of herself of the decision on collateral review" "[o]nly when" the decision articulates "a settled rule," or if it states a new rule that changes what conduct is punishable under substantive criminal law.[9] Chaidez v. United States, 568 U.S. at 347. See United States v. Hopkins, 920 F.3d at 699. A rule that changes what conduct is punishable under substantive criminal law is known as a "substantive rule." United States v. Hopkins, 920 F.3d at 699. A new rule is substantive when it "'forbid[s] criminal punishment of certain primary conduct,'" or "'prohibit[s] a certain category of punishment for a class of defendants because of their status or offense.'" Montgomery v. Louisiana, 577 U.S. 190, 198 (2016)(quoting Penry v. Lynaugh, 492 U.S. 302, 330 (1989)). A rule is "'substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes.'" United States v. Hopkins, 920 F.3d at 699 (quoting Welch v. United States, 578 U.S. 120, 128 (2016)).

Rehaif v. United States alters the "'range of conduct or the class of persons that'" §§ 922(g) and 924(a)(2) punish. Welch v. United States, 578 U.S. 120 at 129 (quoting Schriro v. Summerlin, 542 U.S. 348, 353 (2004)). Rehaif v. United States imposes a new obligation on the United States -- it requires the United States to prove an additional element that the law pre-Rehaif v. United States did not require. See Rehaif v. United States, 139 S. Ct. at 2201 (Alito, J., dissenting)("The Court casually overturns the long-established interpretation of an important criminal statute . . . an interpretation that has been adopted by every single Court of Appeals to address the question. That interpretation has been used in thousands of cases for more than 30 years."). As the Supreme

---

[9] Teague v. Lane recognizes a second exception for "watershed rules of criminal procedure." 489 U.S. at 311. Recently, however, the Supreme Court declared that the "watershed exception is moribund" and "must 'be regarded as retaining no vitality.'" Edwards v. Vannoy, 141 S. Ct. 1547, 1560 (2021)(quoting Herrera v. Wyoming, 139 S. Ct. 1686, 1697 (2019)).

Court states, a decision that "modifies the elements of an offense is normally substantive rather than procedural." Schriro v. Summerlin, 542 U.S. at 354. Rehaif v. United States "changed the established law" by requiring the United States to prove that "the defendant knew 'he had the relevant status' as a felon when he possessed the firearm." United States v. Trujillo, 960 F.3d 1196, 1201 (10th Cir. 2020)(quoting Rehaif v. United States, 139 S. Ct. at 2194). Because of Rehaif v. United States, somebody who does not know that his or her prior conviction is punishable by more than one year cannot be convicted of a §§ 922(g) and 924(a)(2) violation. See United States v. Tignor, 981 F.3d 826, 827 (10th Cir. 2020). The Court, therefore, concludes that, because it requires the United States to prove that "a defendant knew of his prohibited status at the time he possessed the firearms," Rehaif v. United States announces a new rule. United States v. Hisey, 12 F. 4th 1231, 1241 (10th Cir. 2021)(Phillips, J., dissenting)(concluding that Rehaif v. United States "announced a new rule"). See Baker v. United States, 848 F. App'x 188 (mem.), at *189 (6th Cir. 2021)(concluding that Rehaif v. United States "announced [a] new substantive rule that appl[ies] retroactively on collateral review," because the Supreme Court "interpreted a criminal statute to require proof of an additional element to convict a defendant"). Because Rehaif v. United States announces a new rule that applies retroactively, Lujan may take advantage of it on collateral review.

United States v. Reese and Rehaif v. United States, therefore, require Magistrate Judge Garcia to have informed Lujan that, to convict him of being a felon-in-possession, the United States would have to prove that Lujan knew he was a felon for §§ 922(g) and 924(a)(2)'s purposes.[10]   Because Magistrate Judge Garcia did not inform Lujan of the United States'

---

[10]This conclusion is consistent with the Court's opinion in United States v. Young, No. CR 17-0694 JB, 2020 WL 33086, at *14-16 (D.N.M. January 2, 2020)(Browning, J.). In United States v. Young, the Court did not conclude expressly whether not instructing the jury -- in 2017 -- about

requirement, Magistrate Judge Garcia committed a legal error.[11]   Neither the United States nor

Lujan contend that there was a factual error, and the Court on its own sees no factual error.  See

Khamisi-El v. United States, 800 F. App'x 344, 346 (6th Cir. 2020)("Moreover, Rehaif's change

in statutory interpretation cannot be considered 'newly discovered evidence.'")(quoting 28 U.S.C.

§ 2255(h)).  Because there is no factual error, there can be no factual error that was not known at

the time.  The Court's conclusion that United States v. Reese applies a settled rule bolsters this

conclusion, because, had Lujan challenged his conviction on direct review on the grounds that he

was not a felon for §§ 922(g) and 924(a)(2)'s purposes, he would have succeeded.  He made a

legal error by entering into a plea agreement for a crime he could not commit and then giving up

his right to appeal the conviction.  Moreover, because there is no factual error, there is no factual

error of a fundamentally unjust character that would have altered the outcome of Lujan's

conviction proceedings.  Because there is not factual error, coram nobis relief is not available for

the Rehaif v. United States legal error.

---

Rehaif v. United States' new element is legal error.  Rather, the Court notes that the United States
"concede[s] that the error was plain."  United States v. Young, 2020 WL 33086, at *13.  Moreover,
the Court notes that the United States elsewhere has conceded the same error.  See United States
v. Young, 2020 WL 33086, at *8 (citing United States v. Mansfield, No. Cr. 18-0466 PBA, 2019
WL 3858511, at *1 (D. Colo. August 16, 2019)(Brimmer, C.J.)).

    [11]This conclusion is consistent with the Court's opinion in United States v. Young, No. CR
17-0694 JB, 2020 WL 33086, at *14-16 (D.N.M. January 2, 2020)(Browning, J.).  In United States
v. Young, the Court did not instruct the jury in a December 10, 2018, trial, pre-Rehaif v. United
States, decided June 21, 2019, that it had to find that the defendant knew that he is a felon.  See
United States v. Young, 2020 WL 33086, at *1.  The Court concludes in United States v. Young
that Rehaif v. United States does not entitle the defendant to a new trial, because "there is ample
evidence that he knew his status as someone who had been convicted of 'a crime punishable by
imprisonment for a term exceeding one year.'"  2020 WL 33086, at *4 (quoting 18 U.S.C.
§ 922(g)(1)).  Applying rule 33's new-trial standard and rule 52(b)'s plain-error guidance, the
Court notes that the United States "has conceded that the error was plain," but argues that it does
not "affect[] his substantive rights," or "seriously affect[] the judicial proceeding's fairness,
integrity, or public reputation."  United States v. Young, 2020 WL 33086, at *13.

### B.     LUJAN WAS NOT DILIGENT IN BRINGING HIS PETITION.

To be entitled to a writ of coram nobis, Lujan must demonstrate that he was duly diligent in bringing his claim.  See United States v. Morgan, 346 U.S. at 512; Klein v. United States, 880 F.2d at 253.  Lujan does not argue that he was duly diligent.  The United States does not argue either that Lujan was duly diligent or was not duly diligent.

The Supreme Court of New Mexico decided United States v. Reese on May 1, 2014.  See 2014-NMSC-013, 326 P.3d at 454.  The Supreme Court decided Rehaif v. United States on June 21, 2019.  See 139 S. Ct at 2191.  Lujan filed his coram nobis Petition on June 23, 2020.  See Petition at 1.  Lujan's term of supervised release expired on July 26, 2015.  See Petition at 5.  Here, because there is no factual error -- nor does Lujan assert that there is -- there is no earliest time when he could have brought his coram nobis Petition.  The Court cannot calculate the delay between some undefined point and today.  Because United States v. Reese, on its own, clarifies that Lujan's State larceny conviction cannot be a predicate felony for a §§ 922(g) and 924(a)(2) conviction, Lujan could have petitioned for a writ of habeas corpus as early as May 2, 2014, had he not waived his § 2255 collateral-attack rights.  Moreover, if Lujan had not waived his § 2255 collateral-attack rights, and if Rehaif v. United States had been decided when Lujan was still in custody, Lujan could have petitioned for habeas relief under Rehaif v. United States.  If Lujan had been unsuccessful and tried again, he would have been unsuccessful, because 28 U.S.C. § 2255 requires that second or successive habeas petitions be based on either newly discovered evidence or a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable."  28 U.S.C. § 2255(h)(2).  Rehaif v. United States does not state a new rule of constitutional law.  See Mata v. United States, 969 F.3d 91, 93 (2d Cir. 2020); In re Sampson, 954 F.3d 159, 161 (3d Cir. 2020); Khamisi-El v. United States, 800 F. App'x at

346; Jones v. Hendrix, 8 F.4th 683, 686 (8th Cir. 2021); Tate v. United States, 982 F.3d 1226, 1227-28 (9th Cir. 2020); In re Palacios, 931 F.3d 1314, 1315 (11th Cir. 2019).  Rehaif v. United States, therefore, has no effect on Lujan's coram nobis Petition timeline.

Actual innocence constitutes a valid reason for delay, however.  See Bousley v. United States, 523 U.S. at 623 (noting that courts can review procedurally defaulted claims in collateral proceedings on actual innocence showings); United States v. Peter, 310 F.3d at 712 (explaining that a "writ of error coram nobis acts as assurance that deserved relief will not be denied because of technical limitations of other post-conviction remedies"); United States v. Gonzalez, 2016 WL 2989146, at *3 (concluding that the "defendant's lack of diligence in pursing his claim does not bar the present motion for a writ of coram nobis").  An assertion of actual innocence overcomes otherwise procedurally defaulted collateral attacks.  See Bousley v. United States, 523 U.S. at 623; McQuiggin v. Perkins, 569 U.S. 383, 398-401 (2013)(concluding that untimeliness does not categorically bar actual innocence habeas claims); Fontenot v. Crow, 4 F.4th 982, 1029-30 (10th Cir. 2021)("On the other hand, a credible showing of actual innocence lets a petitioner overcome both a procedural default and AEDPA's limitations period.").  The United States asserts that Lujan would be innocent of being a felon-in-possession were he charged today.  See Response at 1.  Lujan agrees with the United States' assertion, but argues that, because of United States v. Reese, he was innocent when he was charged.  See Tr. at 7:14-19 (Elsenheimer).  To establish "actual innocence," a "petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him."  Bousley v. United States, 523 U.S. at 623.

Lujan is not actually innocent, nor was he actually innocent when he was charged.  In this context, "actual innocence" means "factual innocence, not mere legal insufficiency."  Bousley v. United States, 523 U.S. at 623.  Legal errors do not amount to actual innocence.  See United States

v. Barajas-Diaz, 313 F.3d 1242, 1248 (10th Cir. 2002). Legal errors simpliciter are distinct from "a claim of actual innocence." United States v. Barajas-Diaz, 313 F.3d at 1248. "It is essential to distinguish an actual-innocence claim from the more common sort of legal error remedied" in collateral-attack proceedings. Prevette v. Gunja, 167 F. App'x 39, 44 (10th Cir. 2006)(unpublished). In the related, habeas context, an actual innocence claim acts as a "gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations." McQuiggin v. Perkins, 569 U.S. at 400-01. In the habeas context, a petitioner must show that, "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Schlup v. Delo, 513 U.S. 298, 329 (1995). Actual-innocence claims "are not concerned . . . with legal issues," because the "dispositive question is whether" Lujan is "factually innocent." United States v. Miles, 546 F. App'x 730, 734 (10th Cir. 2012)(unpublished). Lujan does not point to any new evidence. Lujan's only claims -- and the United States' only admissions -- are about legal errors in his conviction.

In United States v. Barajas-Diaz, the Tenth Circuit considered whether the defendant was entitled to a writ of habeas corpus under § 2255, because of the Supreme Court's subsequent decision in United States v. Richardson, 526 U.S. 813 (1999). See United States v. Barajas-Diaz, 313 F.3d at 1245. In United States v. Richardson, the Supreme Court concluded that, to convict someone of a continuing criminal enterprise under 21 U.S.C. § 848(C), a jury "must unanimously agree not only that the defendant committed some 'continuing series of violations' but also that the defendant committed each of the individual 'violations' necessary to make up that 'continuing series.'" United States v. Richardson, 526 U.S. at 815 (quoting 21 U.S.C. § 848(C)). The defendant in United States v. Barajas-Diaz argued that United States v. Richardson was available

to him on collateral attack and that he was actually innocent.  See 313 F.3d at 1248.  The Tenth

Circuit noted that, "[t]o the extent that a petitioner argues that his particular jury failed to find

unanimously each of the predicate violations, his argument is for legal rather than actual or factual

innocence," but that, "[t]o the extent, however, that he argues that no reasonable jury could have

found him guilty unanimously of three predicate violations on the evidence presented, he has

advanced a claim of actual innocence."  313 F.3d at 1248.  Here, Lujan's only asserted errors are

that Magistrate Judge Garcia did not instruct him of the United States v. Rehaif element, and that,

under United States v. Reese, he was not a felon for §§ 922 and 924's purposes.  See Petition at 1-

13.  These errors are legal errors only.  The failure to conclude that Lujan was not a felon for

§§ 922 and 924's purposes at the time of his conviction, as United States v. Reese instructs, is a

legal error.  Therefore, despite the legal errors in his conviction, Lujan is not actually innocent of

being a felon-in-possession.  Lujan, therefore, is not entitled to a writ of coram nobis.  Accordingly,

the actual innocence argument does not help Lujan's timeline.  His United States v. Reese legal

error was made when he pled and certainly no later than when United States v. Reese was decided.

Lujan does not explain why he waited until 2020 to seek relief.

The United States District Court for the District of New Mexico is a very busy criminal

court, with an almost 180-mile border with Mexico and twenty-three Indian Reservations.  The

District of New Mexico is the fifth-busiest District in the nation in terms of total criminal filings.

See U.S. District Courts-Criminal Federal Judicial Caseload Statistics (March 31, 2020),

https://www.uscourts.gov/statistics/table/d/federal-judicial-caseload-statistics/2020/03/31     (last

visited February 2, 2020).  The Court has sentenced approximately 2,000 defendants in its eighteen

plus years.  The Presentence Reports of these approximately 2,000 defendants no doubt contain

many legal errors.  Coram nobis is not mean to go through a Court's docket is cleanse the PSRs

and judgments of errors.  Coram nobis is an "extraordinary remedy" meant to correct errors of fact "only under circumstances compelling such action to achieve justice."  United States v. Morgan, 346 U.S. at 511.  It should be used correctly and only for correcting "extraordinary" "errors 'of the most fundamental character.'"  United States v. Morgan, 346 U.S. at 511 (quoting Johnson v. Zerbst, 304 U.S. 458, 465 (1938)).  Otherwise, the Court -- which has difficulty keeping up with all the new cases that the United States is filing -- will spend more time looking backward than looking forwards.

IT IS ORDERED that the Defendant's Petition for a Writ of Coram Nobis, filed June 23, 2020 (Doc. 57), is denied.

_____
UNITED STATES DISTRICT JUDGE

Counsel:

Fred Federici
   Acting United States Attorney
Stephen A. White
   Assistant United States Attorney
United State Attorney's Office
Albuquerque, New Mexico

        Attorneys for the Plaintiff

LeRoy Duarte
Albuquerque, New Mexico

-- and --

Timothy M. Padilla
Timothy M. Padillla & Associates
Albuquerque, New Mexico

-- and --

Margaret Katze
   Federal Public Defender
Aric G. Elsenheimer
    Assistant Federal Public Defender
Federal Public Defender's Office
Albuquerque, New Mexico

      *Attorneys for the Defendant*